UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Valerie Kaisen<br>1681 King Rd<br>Hinckley, OH 44233<br><br>   Plaintiff,<br><br>  -vs.-<br><br>Syneos Health US, Inc.<br>c/o United Agent Group Inc.<br>119 E. Court Street<br>Cincinnati, OH 45202<br><br>   Defendant. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR DISABILITY DISCRIMINATION UNDER 42 U.S.C. § 12101,** *et seq.*<br><br>**JURY DEMAND ENDORSED HEREON** |

For her Complaint against Defendant Syneos Health US, Inc., Plaintiff Valerie Kaisen states:

### INTRODUCTION

1. Defendant violated the Americans with Disabilities Act of 1990 ("ADA") by failing to provide Plaintiff with required medical accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

2. Defendant also violated the ADA by discriminating against Plaintiff who Defendant regarded as disabled due to being unvaccinated.

3. This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a medical accommodation from Defendant's mandate that employees receive the COVID-19 vaccine.

4. Rather than comply with its obligations under the ADA, Defendant threatened to terminate Plaintiff if she did not receive the COVID-19 vaccine and terminated Plaintiff for failure to do so.

1

5. Defendant's statutory violations, discrimination, and retaliation left Plaintiff with the false choice of receiving the COVID-19 vaccine disregarding her medical condition and the risks imposed by the vaccine in light of her medical condition or losing her job.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12101, *et. seq*. Under 28 U.S.C. § 1367(a), this Court has pendent jurisdiction over Plaintiff's state law claim. Plaintiff's claim under Ohio's Anti-Discrimination Law is authorized by Ohio Revised Code § 4112.02.

7. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

8. Plaintiff Valerie Kaisen lives in Hinkley, Ohio and worked as a Neurology Sales Specialist for Syneos Health US, Inc. Plaintiff worked out of the Cleveland, Ohio sales territory and was assigned to the Ponesimod project for Janssen ("JNJ"), a pharmaceutical company of Johnson and Johnson ("J&J").

9. Defendant Syneos Health US, Inc ("SYNEOS") is a biopharmaceutical solutions organization headquartered in Somerset, New Jersey and doing business in Ohio. Defendant's registered agent in Ohio is United Agent Group Inc. at 119 E. Court Street, Cincinnati, Ohio 45202.

## FACTUAL ALLEGATIONS

10. Plaintiff worked for SYNEOS on the Janssen Ponesimod project team for nearly two years with a hire date of August 31, 2020. Plaintiff also worked for SYNEOS under their contract with Theratechnologies from March 2017 through November 2019.

2

11. Plaintiff excelled in her sales role at SYNEOS. Plaintiff was a consistent top performer and ranked number one company-wide in prescription sales during the fourth quarter of 2021.

12. Plaintiff has a medical history of lifelong celiac autoimmune disease and is a five time cancer survivor, undergoing two surgeries while employed at SYNEOS – one for breast cancer in May of 2018, and one for polyp encapsulating colon cancer in June of 2021. Plaintiff also had surgery for melanoma twice – in 1996 and 2006 – and surgery for leiomyosarcoma in 1999.

13. Tracy Snyder ("SNYDER"), Manager, Human Resources, Deployment Solutions, was personally aware of Plaintiff's breast cancer.

14. Plaintiff has a documented allergy to a component of the Covid-19 vaccine.

15. During her employment with SYNEOS, Plaintiff always wore a mask when calling on clients, patients or medical providers and never entered any SYNEOS location. Plaintiff was never asked to show proof of vaccination on any of her in-person sales calls.

16. Beginning November 1, 2021, Plaintiff tested daily for Covid-19 during the work week and submitted her test results as required.

17. Plaintiff tested positive for Covid-19 on December 30, 2021 and received monoclonal antibody treatment. Plaintiff qualified for monoclonal antibody treatment due to her medical condition.

**A. Defendant's Vaccine Mandate**

18. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[1]

19. The Order required that all contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force (the "Task Force") guidance regarding Covid-19 safeguards.

---

[1] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 1/12/2023]

3

20. Following issuance of the Order, Task Force guidance required Covid-19 vaccination.[2]

21. Task Force guidance called for federal contractor employees to receive a complete round of Covid-19 vaccinations by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.[3]

22. Around the same time the Federal Government co-opted Occupational Health and Safety administration ("OSHA") to issue a rule requiring employers with over 100 employees to mandate Covid-19 injections for their workforce.[4]

23. On August 16, 2021, Johnson & Johnson announced a Covid-19 vaccine mandate for all J&J employees and contractors effective October 4, 2021.[5] J&J provided medical and religious accommodation for its employees as required under Title VII and the ADA.

24. On September 2, 2021, SYNEOS announced its new Covid-19 vaccine mandate effective October 22, 2021 in a message from Jonathan Olefson ("OLEFSON"), General Counsel and Corporate Secretary. This mandate required all U.S. employees when "on-site with colleagues or customers" to be fully vaccinated against Covid-19. This included entering a SYNEOS location/attending a SYNEOS event or meeting face-to-face with "clients, colleagues, patients,

---

[2] https://www.saferfederalworkforce.gov/contractors/
[3] *Id.* at 5. This mandate was stayed on December 7, 2021, when the Southern District of Georgia enjoined the Order nation-wide for federal contractors (*See Georgia v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States,* 46 F.4th 1283 (11th Cir. 2022). In response to this nationwide injunction, Department of Defense guidance indicated on December 9, 2021 that it would not enforce the mandate on existing contracts and, on December 10, 2021, the Task Force updated its guidance stating that the government would not seek to enforce the clause implementing requirements of the Order where the place of performance identified in the contract is in the U.S. or an area subject to the injunction (*See* "*UPDATE TO ALERT DATED 12/7/21: Federal Court in Georgia Enjoins Enforcement of Federal Contractor/Subcontractor Vaccine Mandate Nationwide*," https://www.smithcurrie.com/publications/covid-19/alert-federal-court-in-georgia-enjoins-enforcement-of-federal-contractor-subcontractor-vaccine-mandate-nationwide/
[4] On November 12, 2021, the U.S. Fifth Circuit Court of Appeals reaffirmed the halt of the large employer vaccine mandate as part of a nation-wide stay, and OSHA temporarily suspended its enforcement. On December 17, 2021, the U.S. Sixth Circuit Court of Appeals lifted the nationwide ban on the mandate. Finally, on January 13, 2022, the U. S. Supreme Court blocked enforcement of the emergency vaccine mandate for businesses with 100 or more employees. OSHA formally withdrew the mandate on January 26, 2022 (See "Vaccine Mandate Litigation," https://law.georgia.gov/resources/vaccine-mandate-litigation).
[5] https://news.yahoo.com/companies-adopting-covid-vaccine-mandates-103024528.html

clinical trial investigators and healthcare practitioners." OLEFSON noted that "field or site-facing U.S. employees…may need to comply with customer-driven vaccination requirements prior to the Oct. 22 policy start date." The mandate required employees to upload proof of vaccination or obtain an approved accommodation by October 22, 2021 or be denied office access. The announcement provided a process for requesting exemption.

25. Later that same day, Bryan Distefano ("DISTEFANO"), SVP Sales, Deployment Solutions, emailed JNJ team members stating that J&J had rolled out a new vaccination requirement applying to all U.S. field-based employees who worked and/or who performed work at J&J sites. DISTEFANO asked all team members to upload proof of vaccination by September 10, 2021 in an effort to "closely align with the JNJ vaccination timeline." DISTEFANO referred those seeking medical or religious exemption to the "Employee Exemption & Accommodation Process."

26. On October 5, 2021, DISTEFANO emailed another reminder to the JNJ team to upload their proof of vaccination. This message emphasized a goal of 100% vaccine compliance before the October 22, 2021 deadline.

27. Although Defendant purported to align with J&J's vaccine rollout, Defendant's policy goal of 100% vaccine compliance conflicted with J&J's policy to grant qualified medical and religious exemption.

28. In an email dated October 8, 2021, SYNEOS National Business Director Armando Baquero ("BAQUERO"), communicated a goal of 100% vaccination compliance by October 18, 2021 or "earlier if possible." BAQUERO directed management to contact unvaccinated employees no later than October 15, 2021 for a "discussion."

5

29. Defendant's mandate was absolute. Although granting temporary accommodations until January 31, 2022, Defendant provided no ongoing accommodation such as periodic testing, mask wearing, or social distancing, even for employees like Plaintiff with acquired immunity through COVID-19 infection. For example, SNYDER told Plaintiff that SYNEOS pulled back all exemptions in 2022, and that "across the board" no one could be exempt from the vaccine. There were no exceptions.

30. Even the temporary accommodation was unduly burdensome – requiring daily PCR covid testing and submission of the results served to intimidate and coerce Plaintiff's compliance.

**B. Federal Law Prohibiting Disability Discrimination and Retaliation**

31. The ADA requires employers to offer reasonable accommodations for employees who do not get vaccinated due to disability unless the employer can demonstrate an undue hardship on their business. Undue hardship under the ADA means "significant difficulty or expense." *See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"* § K.1, EEOC (Updated July 12, 2022).[6]

32. Absent undue hardship, failure to provide reasonable accommodation is an unlawful employment practice. 29 C.F.R. § 1630.9 (a) (Last amended January 17, 2023).[7]

33. Once an employer learns of an employee's disability, the employer is obligated to "engage in a meaningful dialogue with the employee to find the best means of accommodating that disability." See *Peeples v. Clinical Support Options, Inc.*, 487 F.Supp.3d 56, 62 (D. Mass. 2020) (citing *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007)).

34. Masking, periodic testing and social distancing are examples of reasonable accommodation

---

[6] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]
[7] https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1630/section-1630.9

to vaccination. *See* §§ K.1, K.2, K.6, EEOC (Updated July 12, 2022).[8]

35. Although Defendant let employees apply for a religious or medical disability exemption to Covid-19 vaccination, Plaintiff's request for medical exemption was processed in a discriminatory manner.

**C. Defendant's Accommodation Request System**

36. Defendant SYNEOS created a method for employees to request medical or religious accommodation for exemption from Defendant's Covid-19 vaccination requirement.

37. Employees could request accommodation from the vaccine for medical reasons by completing a medical exemption form and submitting it to the specified mailbox. This form included a section to be completed and signed by the requestor's medical provider.

38. No specific deadline for submission existed, but employees had to be approved by October 22, 2021 or they would be "denied office access."

**D. Plaintiff's Accommodation Requests and Defendant's Responses**

39. On September 15, 2021, Plaintiff submitted her request for permanent medical exemption to Defendant. On the exemption request, Plaintiff's medical provider certified that she should not receive the Covid-19 vaccine because she was allergic to a component of the vaccine and had a history of multiple types of cancer. Plaintiff also attached a letter from her physician dated September 2, 2021 that provided additional verification and recommended that she not receive the covid vaccine due to her medical condition.

40. Defendant approved Plaintiff's medical exemption request on September 22, 2021 and referenced her allergy to a component of the vaccine. The approval further stated that Human

---

[8] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

7

Resources ("HR") would partner with her business unit to determine whether Defendant could provide a temporary accommodation, expecting a determination within 15 business days.

41. On October 6, 2021, Plaintiff received an email reminder from her manager to upload her proof of vaccination status by October 22, 2021.

42. On October 15, 2021, SYNEOS HR emailed Plaintiff that the accommodation review process was taking "longer than expected."

43. Defendant confirmed approval of Plaintiff's medical exemption on October 29, 2021 in an email from Nicole Blum, Director, HR Shared Services ("BLUM"). Effective November 1, 2021, the approval required Plaintiff to take daily PCR tests for Covid-19. Plaintiff had to submit daily proof of testing through the HR self-service tool to meet with "clients, patients, healthcare providers at sites or in the field" in performance of her job.

44. As of November 1, 2021, Plaintiff began daily testing for Covid-19 and submitted her test results as instructed. Though daily testing was overly burdensome and felt like harassment and intimidation, Plaintiff followed the guidelines and wore a mask daily.

45. On December 9, 2021, Defendant rescinded Plaintiff's medical accommodation effective January 31, 2022. BLUM emailed Plaintiff stating her accommodation was only temporary through January 31, 2022, and if Plaintiff did not get vaccinated or secure other employment "that does not cause an undue hardship," Plaintiff would be terminated on January 31, 2022. BLUM stated that Plaintiff could not "adequately perform" the "essential functions" of her job because she was unvaccinated. BLUM never explained how Plaintiff's status as "unvaccinated" prevented Plaintiff from performing essential functions or what constituted an "undue hardship." BLUM did not seek to engage in interactive discussion with Plaintiff regarding reasonable accommodation.

46. The temporary "accommodation" also prohibited Plaintiff from accessing any SYNEOS office building, and if she had to attend a company meeting or event not at a SYNEOS office, she had to follow all SYNEOS, local jurisdiction, and client safety requirements. Defendant stated that these requirements potentially included masking, social distancing, and testing – all of which Plaintiff was already doing. These are also listed as reasonable accommodations to the vaccine under ADA Covid Guidelines.[9]

47. Throughout the accommodation process, Plaintiff consistently told her manager that she had never been asked by any provider or client to show proof of vaccination. She always wore a mask and followed client and provider protocols with no hindrance to her job performance. Plaintiff continued to excel in her job performance.

48. On January 4, 2022, Plaintiff submitted a second exemption request after testing positive for Covid and receiving monoclonal antibody treatment. Plaintiff requested both a permanent medical exemption based on a documented allergy and a temporary medical exemption based on treatment with monoclonal antibodies. Plaintiff asked for temporary exemption until April 1, 2022 – 90 days after the infusion of the monoclonal antibodies.

49. On January 21, 2022, HR advised Plaintiff that due to her recent Covid infection Plaintiff was eligible for a 90-day extension of the accommodation period. HR asked Plaintiff to declare her intention regarding vaccination after the extended accommodation period, acknowledging that if Plaintiff failed to be vaccinated by April 4, 2022, Plaintiff would be terminated. Defendant did not seek to engage in interactive discussion with Plaintiff regarding reasonable accommodation. Plaintiff felt coerced to declare her intention to receive the Covid vaccine to keep her job, at least for the extended accommodation period.

---

[9] *Id.*, at § K.2.

50. On January 25, 2022, Plaintiff received another letter from HR confirming her temporary accommodation through April 1, 2022. Within three (3) days – or April 4, 2022 – Plaintiff had to comply with the vaccination policy or face immediate termination. Defendant did not seek to engage in interactive discussion with Plaintiff regarding reasonable accommodation.

51. Sometime between mid to late March, 2022, SNYDER told Plaintiff she would be terminated if she did not get the vaccine. Plaintiff responded that she never had to show a vaccination card but only to wear a mask. She did not need a vaccination card to perform her job. SNYDER told Plaintiff that SYNEOS pulled back all exemptions in 2022, and that "across the board" no one was exempt from the vaccine. SNYDER did not seek to discuss reasonable accommodation with Plaintiff.

52. On April 5, 2022, HR notified Plaintiff that her anticipated end date in her current position was April 8, 2022.

53. Plaintiff was terminated effective April 8, 2022.

54. Considering Plaintiff was permitted to continue working for over five months from the time Defendant first required vaccination to the time Plaintiff was fired, there was no reason for Defendant to refuse continued accommodation. The mandate was not about safety, but about compliance. If it was about safety Defendant would have immediately halted Plaintiff's employment until Plaintiff was vaccinated. Instead, Plaintiff was permitted to work in the same capacity for months until Defendant finally fired her.

55. The Covid vaccine has not been shown to prevent transmission of Covid-19. Thus, there was no reason for SYNEOS to coerce Plaintiff to take the Covid vaccine. Since the Covid vaccine has not been shown to prevent transmission of Covid-19, then the decision to take the vaccine is a purely personal choice. For this reason all mandates, including Defendant's mandate, are

unconscionable and without justification, as is Defendant's refusal to permit Plaintiff to continue working under the same accommodations she was permitted to work with for over five months.

**E. EEOC filing and Plaintiff's right to sue**

56. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the essential issues in this Complaint.

57. The EEOC issued Plaintiff a Notice of Right to Sue on October 25, 2022.

## COUNT I
## Violation of the ADA, 42 U.S.C. § 12101, *et seq.*
## Disability discrimination – failure to accommodate

56. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

57. Plaintiff requested reasonable medical accommodations from Defendant's mandates due to disability.

58. Defendant refused to engage in the interactive process with Plaintiff regarding her medical accommodation requests.

59. Defendant violated the ADA when it denied Plaintiff's accommodation requests.

60. Defendant discriminated against Plaintiff because of her disabilities.

61. Defendant's failure to provide medical accommodations harmed and continues to harm Plaintiff.

62. By failing to engage in the interactive process or offer any permanent reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless, and violated the ADA.

## COUNT II
## Violation of the ADA, 42 U.S.C. § 12111, *et seq.*
## Discrimination based on perceived disability

63. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

64. Plaintiff is a "qualified individual" who was an employee of Defendant, as defined under the ADA, 42 U.S.C. § 12111(4), (8). Plaintiff performed the essential functions of her position admirably.

65. Under the terms of the ADA, one is considered disabled if he or she: has (A) a physical or mental impairment that substantially limits one or more of that person's major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment …" 42 U.S.C. 12102(1).

66. To establish disability under the third definition, being regarded as having an impairment, the ADA provides: (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity; (B) Paragraph 1(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3).

67. Covid-19 is not transitory and minor. At all relevant times material to this action, Covid-19 was a well-known, highly contagious, and sometimes deadly virus that has resulted in an ongoing global pandemic.

68. Plaintiff objected to mandatory Covid-19 vaccination and submitted a request for accommodations based on medical issues.

69. The assumptions made by Defendant after receiving notice of Plaintiff's medical status as unvaccinated against Covid-19 were used to justify Defendant's incorrect and unlawful determination that Plaintiff could not perform her job duties because she was disabled and would put the other employees at risk. This assumption is not based on any reasonable understanding of

the facts regarding Plaintiff's ability to perform her essential job duties without accommodation, nor of the efficacy of the Covid-19 vaccines regarding the prevention, or failure to prevent, transmission of Covid-19. There was no factual support for the idea that Plaintiff could not perform her essential job duties with the use of a mask and frequent testing, at a minimum.

70. Defendant made no individualized risk assessment regarding Plaintiff's perceived disability before terminating Plaintiff.

71. Defendant's unlawful discrimination is the direct and proximate cause of deprivation of Plaintiff's equal employment opportunities and her economic and non-economic damages.

72. The conduct of Defendant was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle Plaintiff to an award of punitive damages against Defendant, to deter Defendant and others from such conduct in the future.

## COUNT III
### Violation of the ADA, 42 U.S.C. § 12203
### Prohibited Retaliation and Coercion

73. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

74. The ADA prohibits retaliation and coercion for protected activities. 42 U.S.C. § 12203 states: "(a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed,

13

or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

75. When Plaintiff objected to Defendant's refusal to allow her reasonable accommodations, and when Defendant treated Plaintiff as though she was disabled due to being unvaccinated, and when Defendant treated Plaintiff differently due to Plaintiff's medical condition, and in claiming Plaintiff's continued employment posed a risk to others, Defendant used unlawful retaliatory and/or coercive tactics against Plaintiff.

76. Defendant's decisionmakers were aware of Plaintiff's protected activity of requesting an exemption to the vaccination policy. Their later unlawful termination of Plaintiff was an act of retaliation.

77. Defendant's behavior toward Plaintiff was irrational and motivated by a desire to punish Plaintiff for complaining about discrimination.

78. Defendant's prohibited retaliation against Plaintiff is a direct and proximate cause of Plaintiff's economic and non-economic damages.

79. The conduct of Defendant was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle Plaintiff to an award of punitive damages against Defendant, to deter Defendant and others from such conduct in the future.

## COUNT IV
### Violation of R.C. § 4112.02
### Disability Discrimination in Employment

80. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

81. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on disability.

82. Defendant violated Ohio's Anti-Discrimination law when it terminated Plaintiff due to her medical condition which prevented her from following Defendant's mandates.

83. Defendant has reasonable alternatives available that could have been offered to accommodate Plaintiff's medical condition, but Defendant refused Plaintiff those accommodations.

84. Defendant discriminated against Plaintiff because of her disability.

85. Defendant's failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (0096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

>Respectfully Submitted,
>
>/s/ Warner Mendenhall
>Warner Mendenhall (0070165)